UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════

CHARLES SPINKS,

                              Plaintiff,

                                                    **DECISION AND ORDER**
              v.                                    10-CV-745A

ORLEANS COUNTY,

                              Defendant.

═══════════════════════════════

## I.      INTRODUCTION

Pending before the Court is a motion by defendant Orleans County to dismiss plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").  In his amended complaint, plaintiff claims equal-protection violations and federal civil-rights violations actionable under 42 U.S.C. § 1983.  Plaintiff maintains that Orleans County singled him out for an investigation under New York's animal-cruelty laws, among other dog owners in Orleans County, because he is black.  Orleans County seeks dismissal of the amended complaint because plaintiff entered a guilty plea in state court and has not pled that county officials knew about similarly situated dog owners whom they should have investigated.

With the consent of opposing counsel, plaintiff filed his amended complaint in response to Orleans County's motion to dismiss.  The Court permitted Orleans County to update its motion papers to account for any new information in the amended complaint.  The Court held oral argument on June 3, 2011.  For the reasons below, the Court grants Orleans County's motion.

## II.    BACKGROUND

This case concerns whether racial animus cost plaintiff his dog kennel license and prompted an investigation for animal cruelty that led to a guilty plea in state court.  Plaintiff lives in the Town of Gaines in Orleans County and owned approximately 35 dogs that he kept at his residence.  A number of these dogs belonged to a breed known as "coon dogs," and plaintiff was a coon dog breeder.  As part of his dog owning and breeding activities, plaintiff belonged to two different organizations: the "Coon Club," which promotes breeding of coon dogs for shows and hunting; and the Orleans County Houndsmen, which is a social group for coon dog owners.  Plaintiff has been a member of the Coon Club for 17 years; he also has held a kennel license to breed his coon dogs, though he has not pled how many years he held that license.

Although the amended complaint lacks detail concerning the history of plaintiff's relations with Orleans County, the alleged problems that plaintiff experienced and that gave rise to this action began in September 2007.  First, "Plaintiff attempted to renew his kennel license through the County of Orleans;

2

this request was arbitrarily denied." (Dkt. No. 15 ¶ 14.)  The amended complaint

contains no other information about plaintiff's efforts to renew his kennel license

or about any communication between plaintiff and Orleans County concerning

the license.[1]

Second, plaintiff was prosecuted in state court on charges of animal

cruelty.  On September 21 and 26, 2007, an Orleans County animal control

officer responded to animal-related complaints concerning plaintiff's residence.

On October 12, 2007, an investigator from the Humane Society of Rochester

and Monroe County ("Humane Society") visited plaintiff's residence to

investigate an animal cruelty report.  Based on these three visits to plaintiff's

residence, the Humane Society applied to Gaines Town Court on October 16,

---

[1] Unfortunately, the amended complaint also shows several signs of poor cutting and pasting from other documents.  The amended complaint states that, among other statutes, this Court has jurisdiction under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, even though this case has nothing to do with employment discrimination.  The amended complaint also claims jurisdiction under 29 U.S.C. § 1331, which does not exist; and 29 U.S.C. §§ 206 and 216, which set and enforce the federal minimum wage and also have nothing to do with this case.  The amended complaint describes the Monroe County Humane Society as a second defendant, even though Orleans County is the only defendant that was named in the caption and served.  Finally, the amended complaint states that plaintiff has retained counsel "to enforce the terms and conditions of the employment relationship with Defendants and each of them" (Dkt. No. 15 ¶ 60), even though Orleans County never has employed plaintiff and this case has nothing to do with employment discrimination.  The poor draftsmanship seen in the amended complaint has prompted the Court to note approximately 40 cases that plaintiff's counsel has had dismissed in this District alone in the past few years.  (*See* attached Appendix.)

3

2007 for a warrant "directing a search for and seizure of the following property:

Any animal(s) found to be in violation of Section 373(2) and 353 of the New York

State Agriculture and Markets Law." (Dkt. No. 16-2 at 3.)[2]   The Humane Society

presented the following information to Gaines Town Court in support of its

application:[3]

---

[2] The Humane Society had authority under New York law to apply for a search warrant.  *See* N.Y. Agric. & Mkts. Law § 371 ("[A]ny agent or officer of any duly incorporated society for the prevention of cruelty to animals may issue an appearance ticket . . . , summon or arrest, and bring before a court or magistrate having jurisdiction, any person offending against any of the provisions of article twenty-six of the agriculture and markets law."); *id.* § 372 ("Upon complaint under oath or affirmation to any magistrate authorized to issue warrants in criminal cases, that the complainant has just and reasonable cause to suspect that any of the provisions of law relating to or in any wise affecting animals are being or about to be violated in any particular building or place, such magistrate shall immediately issue and deliver a warrant to any person authorized by law to make arrests for such offenses, authorizing him to enter and search such building or place, and to arrest any person there present found violating any of said laws, and to bring such person before the nearest magistrate of competent jurisdiction, to be dealt with according to law.").

[3] Although plaintiff has pled that his "dogs, at all times, were in good condition, well fed, well provided and cared for" (Dkt. No. 15 ¶ 9.), the Court notes the details of plaintiff's prosecution because of his allegation that Orleans County unlawfully searched his house and seized his dogs "without a finding of guilt." (*Id.* ¶ 47.)  The details come from documents that Orleans County has attached to its motion papers and whose authenticity plaintiff has not challenged.  "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of

A.    "On October 12, 2007 at approximately 11:00 a.m. I responded to [plaintiff's] location to investigate an animal cruelty report.  From the street the smell of dog feces was evident.  8-10 dogs with dilapidated wooden doghouses were also visible from the road.  With the permission of the next door neighbor, Beverly Kramer, I entered her property and was able to see 30–35 dogs.  Some of the dogs were chained to old wooden doghouses and others were in raised coops.  The coops are old, decrepit, and full of feces.  Several dogs are thin and unable to get out of their own feces.  The accumulation of feces under the coops is at least 2 feet deep."  (*Id.*)

B.    "The owner is in violation of the New York State Ag. & Markets law, Section 353 subsection B.  The dogs are being left outside exposed to the elements without proper shelter.  The doghouses are not insulated or properly waterproofed."  (*Id.*)

C.    "On September 21, 2007 at approximately 12:00 P.M. I responded to 14739 Ridge Rd., Town of Gaines, on a complaint of loose dogs in roadway, and check the welfare of dogs at the Spinks home.  I checked the area and located an unidentified beagle at the property.  I knocked and rang the doorbell.  No one answered door.  I saw a small puppy in a crate inside the residence.  I called the beagle to the rear of the residence to try to contain it as a courtesy to the owner.  When I entered the back yard, I encountered approximately 34 dogs (hunting breeds—beagles, red ticks, blue ticks, etc.) chained to dog houses (not insulated) or in wire pens elevated off the ground with plywood houses attached.  Pens and dog houses were in poor condition.  Feces were in piles under wire pens, creating an offensive odor.  Two hounds were extremely thin with hip bones protruding.  One beagle had a young litter of pups.  Another beagle was birthing pups in an elevated pen.  One of these had fallen out of pen and onto the ground.  I placed it back in pen.  Another pup from this litter was dead in pen.  I was unable to secure the loose beagle."  (*Id.* at 4.)

---

fact regarding the relevance of the document."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks and citations omitted).

Justice C. Eugene Leigh of Gaines Town Court issued the requested search warrant on October 16, 2007.  In the search warrant, Justice Leigh described plaintiff's residence and limited the search to the hours between 6:00 a.m. and 9:00 p.m.  Justice Leigh also authorized a search and seizure for the following: "Any animal(s) found to be in confined, crowded or unhealthy condition, or in unhealthy or unsanitary surroundings, in violation of Section 373(2) of the Agriculture and Markets Law or in the opinion of said officer, not properly cared for or without sustenance, food or drink.  Also any such evidence which tends to demonstrate that an offense was committed or that a particular person participated in the commission of an offense pursuant to Section 373(2) and 353 of the Agriculture and Markets Law of the State of New York."  (*Id.* at 6.) The Humane Society executed the warrant on October 16, 2007 and seized 35 dogs, 5 live puppies, and 3 recently dead puppies.

In response to what it perceived when executing the search warrant, the Humane Society filed an Information in Gaines Town Court on or about October 24, 2007.  The Information charged plaintiff with 38 misdemeanor counts of cruelty to animals in violation of N.Y. Agriculture and Markets Law ("A&ML") § 353 and 38 misdemeanor counts of failing to provide shelter in violation of A&ML § 353b(2)(a).  Accompanying the Information was a supporting deposition from a Humane Society veterinarian who attended the execution of the search warrant.  The supporting deposition contained the following information:

6

> All the dogs lived outside with small wood structures for shelter.  Some of the dogs were tethered on chains 6 (six) to 8 (eight) foot in length.  Other dogs were confined inside the structures.
>
> The wood structures were in a state of disrepair with broken, splintered wood floors, rusted broken wire floors and sides.  Some shelters lacked a solid roof thus exposing the dogs to the elements.
>
> Many of these shelters housed 3 (three) to 4 (four) dogs, clearly more than could comfortably fit causing the dogs to not have the ability to easily move about.  Most of the shelters also had more than a few days worth of waste accumulated causing the dogs to have to continually walk and stay in the waste leading to soiled and urine soaked feet and bodies.  Many of these shelters also had weeks of stool accumulated between the wire floors rising up several feet from the ground to just below the flooring.  Some of the shelters that had solid roofs were full of debris and appeared ready to collapse.
>
> The water buckets and troughs were dirty and moldy.  Some were contaminated with fecal matter and were unfit to drink from.
>
> One dog tethered at it's [sic] own shelter had 3 (three) dead pups with it on the ground (one headless) that appeared to have died approximately a day previous.
>
> The dogs were transported back to the Humane Society where physical exams were preformed on 35 (thirty five) dogs and 5 (five) puppies.

(Dkt. No. 16-2 at 12–13.)  On October 3, 2008, plaintiff, his attorney Richard Dever, and Orleans County prosecutor Joseph S. Sansone entered an agreement to adjourn the case in contemplation of dismissal ("ACD"), pursuant to N.Y. Criminal Procedure Law ("CPL") § 170.55, with respect to the animal-cruelty charges and to plead guilty to the improper-shelter charges.  As part of this agreement, plaintiff agreed to repay the Humane Society for costs incurred and to consent to all searches of his property during the term of the ACD. Plaintiff also agreed to waive any right to appeal the disposition of his case.  At

no time did plaintiff take any action in state court to challenge the validity of the search warrant or to suppress any evidence gathered when it was executed.

Nearly two years after his criminal case concluded, plaintiff decided to file his complaint on September 15, 2010.  Plaintiff filed an amended complaint on January 12, 2011 in response to Orleans County's pending motion.  Orleans County appears to have had no involvement in plaintiff's criminal case other than having one of its animal-control officers submit a deposition in support of the Humane Society's application for a warrant; and having one of its district attorneys arrange the final disposition.  Nonetheless, plaintiff named Orleans County as the sole defendant.

The amended complaint contains four causes of action.  In the first cause of action, plaintiff accuses Orleans County of a "class of one" equal-protection violation.  According to plaintiff, no other member of the Orleans County Houndsmen has insulated dog houses for his dogs, and yet no other member has been prosecuted for improper shelter.  Plaintiff further has named four other individuals in Orleans County who allegedly did not have insulated dog houses and yet have not been prosecuted.  Orleans County wants this cause of action dismissed because plaintiff's prosecution stemmed from a search warrant that state court issued upon a finding of probable cause.  Plaintiff never challenged the warrant and eventually pled guilty to some of the charges filed against him.  Additionally, plaintiff has not pled that Orleans County was aware of any other

dog owners who maintained their dogs in similar conditions that would prompt the issuance of a search warrant.

In the second cause of action, plaintiff accuses Orleans County of "selective and discriminatory prosecution" in violation of the Fourteenth Amendment.  According to plaintiff, Orleans County could have prosecuted the other individuals that he mentions in his amended complaint but chose not to do so on racial grounds—they are white in a county that is 94% white, while plaintiff is black.  Orleans County wants this cause of action dismissed because, again, plaintiff has not pled that either he or anyone else has made Orleans County aware of any other violations that should be prosecuted.

In the third cause of action, plaintiff accuses Orleans County of unlawfully searching his premises and seizing his dogs in violation of the Fourth Amendment.  Plaintiff further accuses Orleans County of violating his Fourteenth Amendment due-process rights by requiring a seizure bond to be posted to avoid adopting out the dogs, and of ultimately sterilizing and adopting out the 28 dogs for which plaintiff could not afford to post a seizure bond.  Orleans County wants this cause of action dismissed because the search and seizure occurred pursuant to a warrant issued by state court upon that court's finding of probable cause.  Additionally, plaintiff never challenged the warrant in state court and eventually chose to plead guilty to some of the charges filed against him.

In the fourth cause of action, plaintiff accuses Orleans County of violating his civil rights under 42 U.S.C. § 1981 through its racially motivated decisions in denying him a kennel license, seizing his dogs, and prosecuting him for animal cruelty and improper sheltering of dogs.  Orleans County wants this cause of action dismissed because, as with the other causes of action, it is undermined by plaintiff's decisions not to challenge the search warrant and to plead guilty. This cause of action is undermined further by plaintiff's failure to plead that Orleans County knew of similarly situated violators and chose not to act on that knowledge.

## III.    DISCUSSION

### A.    *FRCP 12(b)(6) Generally*

In general, Orleans County challenges whether plaintiff has set forth any legally sufficient claims.  "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  FRCP 8(a)(2).  "A short and plain statement of the claim" does not mean a short and plain statement of the eventual jury charge for that claim, or a short and plain recitation of the legal elements for that claim.  FRCP 8(a)(2) requires a plaintiff to state, in concise but plausible fashion, what he currently thinks a defendant actually did to him, subject to revision during later discovery.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted).  Courts assess the legal sufficiency of a claim while "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 61 (2d Cir. 2010) (internal quotation marks and citation omitted).

## B.   *Lack of Conduct by Orleans County*

As an initial matter, the Court cannot ignore that plaintiff has failed to plead Orleans County's connection to any of the unlawful conduct that he describes in the last three causes of action of his amended complaint.[4]  "A complaint is fatally defective on its face if it fails to allege that the defendants were directly and personally responsible for the purported unlawful conduct." *Cummings-Fowler v. Suffolk County Comm. Coll.*, No. 09-CV-3593, 2010 WL

---

[4] Orleans County was willing to assume, for purposes of its motion, that it seized plaintiff's dogs, but it did raise this issue in its memorandum of law. (*See* Dkt. No. 16-6 at 4 n.8.)  Even if Orleans County had not raised the issue, however, "[t]he district court has the power to dismiss a complaint sua sponte for failure to state a claim." *Leonhard v. U.S.*, 633 F.2d 599, 609 n.11 (2d Cir. 1980) (citations omitted).

4568987, at *4 (E.D.N.Y. Nov. 2, 2010) (citations omitted).  Here, plaintiff's

neighbors appear to have submitted complaints about plaintiff's residence.  The

Humane Society applied for a search warrant of plaintiff's residence.  A Gaines

Town Court justice made a finding of probable cause and issued the warrant.

The Humane Society executed the warrant and filed the Information against

plaintiff.  In short, everyone except Orleans County initiated the investigation and

prosecution of plaintiff.  The only involvement of Orleans County in this case

seems to be that an Orleans County animal control officer submitted a

deposition in support of the Humane Society's application for a warrant, and that

an Orleans County prosecutor signed plaintiff's plea agreement.  "Having failed

to allege, as [plaintiff] must, that [Orleans County was] directly and personally

responsible for the purported unlawful conduct, [his] complaint is 'fatally

defective' on its face."  *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir.

1987) (citations omitted); *accord Rosa R. v. Connelly*, 889 F.2d 435, 437 (2d Cir.

1989) ("Without any allegations that [Orleans County] was 'directly and

personally responsible for the purported unlawful conduct,' [plaintiff] failed to

assert a distinct claim against [it], rendering [his] complaint as to [Orleans

County] 'fatally defective' on its face.") (quoting *Alfaro Motors*).  This basis alone

suffices to dismiss the last three causes of action of the amended complaint.

The Court will proceed to assess the merits of Orleans County's motion assuming that, in the alternative, plaintiff's amended complaint has no facial defects.

### C.   First Cause of Action: "Class of One" Discrimination

The standard for "class of one" equal-protection violations applies to the claim in plaintiff's first cause of action that Orleans County irrationally denied him a kennel license.[5]   Supreme Court cases "have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.  In so doing, we have explained that the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."  *Village*

---

[5] The first cause of action also contains a selective-enforcement claim, but that claim is distinct from the class-of-one claim and will be addressed with the second cause of action.  *See Casciani v. Nesbitt*, 659 F. Supp. 2d 427, 444–45 (W.D.N.Y. 2009) (Larimer, *J.*) ("While the Second Circuit has not resolved the question of whether there is truly a distinction between selective enforcement and class of one equal protection theories, courts in this circuit have repeatedly treated them as distinct theories with distinct elements of proof and have accordingly evaluated them as separate claims.") (internal quotation marks and citations omitted); *id.* at 435 n.2 ("Although the complaint uses the term 'selective prosecution,' for the purposes of this case there is no practical difference between a claim of selective prosecution and a claim of selective enforcement, and the two will be used interchangeably.").

*of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (internal quotation marks, alteration, and citations omitted).  Class-of-one claims must satisfy two elements.  "[T]o succeed on a class-of-one claim, a plaintiff must establish that: (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake."  *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (internal block quoting and citations omitted).  These two elements, when pled early in a case or proven at trial, emphasize that what makes a class-of-one equal-protection violation offensive "is not simply the act of singling out, but rather that the singling out is done in such an arbitrary way."  *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 547 (7th Cir. 2008) (citation omitted).

Even though plaintiff need only plead a complete class-of-one claim this early in his case, he has not crossed even this minimal threshold.  After separating the details of plaintiff's narrative concerning selective enforcement and unlawful search and seizure, his narrative about his kennel license consists of one sentence: "In September 2007, Plaintiff attempted to renew his kennel license through the County of Orleans; the request was arbitrarily denied."  (Dkt. No. 15 ¶ 14.)  Plaintiff has not pled that anyone else in Orleans County has a

kennel license.  Plaintiff has not pled that any other holders of kennel licenses successfully renewed their licenses when Orleans County denied his renewal. *Cf. Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) ("[T]he Rustons do not allege specific examples of the Town's proceedings, let alone applications that were made by persons similarly situated.  The equal protection claim as to the Town defendants therefore fails for lack of factual allegations to support the legal conclusion.").  Plaintiff also has not pled any information that would allow the Court to compare him to other license holders, such as, for example, Orleans County's stated rationale to each license holder compared to each holder's eligibility for a renewal.  *See Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) ("We have held that class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.") (citation omitted). Plaintiff's one-sentence assertion of an arbitrary license denial is so conclusory that the Court would have to go beyond making favorable inferences and assume an entire factual background to sustain plaintiff's claim.  The Court declines to do so, and accordingly grants Orleans County's motion as to the first cause of action.

### D.    *Second Cause of Action: Selective Enforcement / Prosecution*

"Whereas a class-of-one claim typically focuses on the sheer irrationality of the manner in which the plaintiff was treated, a selective-enforcement plaintiff

15

must show that, compared with others similarly situated, he was selectively treated, and that 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Casciani*, 659 F. Supp. 2d at 435 (quoting *Miner v. Clinton County*, 541 F.3d 464, 474 (2d Cir.2008)) (other citations omitted); *see also Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999) (setting forth the two elements of a selective-enforcement claim).  Selective treatment by a governmental entity implies some sort of conscious decision to take action against some people but not others against whom the same action could be taken.  Accordingly, the first element of a selective-enforcement claim contains the implicit requirement that the governmental entity in question have some awareness of others against whom it could take the same action.  *Cf. LaTrieste Rest. v. Village of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999) ("While there is no doubt that the previous occupants of the premises violated the zoning restriction and that the Village did not enforce the restriction against them, LaTrieste failed to show that the Village knew about these violations.  Absent such proof, LaTrieste would be hard-pressed to show that it was singled out for selective treatment."); *Christian v. Town of Riga*, 649 F. Supp. 2d 84, 94 (W.D.N.Y. 2009) (Telesca, *J.*) ("Further, the Second Circuit has held that, to the extent a municipality is selectively enforcing land use restrictions, a plaintiff

16

would be 'hard pressed' to demonstrate selective treatment without also demonstrating the municipality's knowledge of the other, unenforced violations.") (citing *LaTrieste*).

Applying the elements of a selective-enforcement claim to the issue of animal-cruelty laws here, plaintiff must plead sufficiently two elements: (1) that Orleans County enforced A&ML §§ 353, 353b(2)(a), and 373(2) against plaintiff and not against other dog owners whom it knew was violating those statutes similarly; and (2) that race or some other malicious intent drove Orleans County to enforce those statutes against only plaintiff and not against any other violators.

A review of the factual assertions in the amended complaint shows that plaintiff has not pled the first element of his selective-enforcement claim sufficiently.  Plaintiff has pled that he is a member of the 27-member Orleans County Houndsmen, that every other member of this group owns dogs, and that no other member owns insulated dog houses.  Plaintiff also has named four other residents of Orleans County who own hunting dogs but do not have insulated dog houses.[6]  The amended complaint is missing three important

---

[6] Plaintiff has pled most of the facts concerning similarly situated dog owners "upon information and belief."  Facts pled upon information and belief are permitted by FRCP 11(b) and are permitted in opposition to a motion to dismiss.  *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) ("The *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged upon information and belief where

pieces of information, however.  Plaintiff has not pled that any of the allegedly similarly situated people mentioned in the amended complaint are breeders, as he is.  Although plaintiff has pled that others have been keeping dogs outside in inadequate shelters, he has not pled that anyone mentioned in the amended complaint also was observed keeping 35 dogs in unsanitary conditions.  Finally, and most importantly, plaintiff has not pled anywhere in the amended complaint that Orleans County had any reason to know of any ongoing violations similar to the violations alleged against him.  For example, the amended complaint implies that Orleans County began investigating plaintiff after receiving a tip from a next-door neighbor with whom plaintiff has an antagonistic relationship.  Plaintiff has not pled that Orleans County has received similar tips about anyone else and has chosen not to act on them.  If plaintiff cannot make even an initial assertion that Orleans County had potential violators from whom to "select" then its enforcement against plaintiff cannot be seen as "selective."  The Court thus grants Orleans County's motion as to the second cause of action.

### E.    *Third Cause of Action: Search and Seizure / Due Process*

The unlawful conduct that plaintiff has alleged in his third cause of action all flowed from the decision by Gaines Town Court to grant the Humane

---

the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.") (internal quotation marks and citations omitted);

18

Society's application for a search warrant.  Plaintiff's third cause of action, then, reduces to an attack on the validity of that search warrant.  "Under 28 U.S.C. § 1738 a federal court must, in according full faith and credit, give to a State court judgment the same preclusive effect as would be given to the judgment under the law of the State in which the judgment was rendered.  This rule applies with equal force to actions brought under 42 U.S.C. § 1983."  *Johnson v. Watkins*, 101 F.3d 792, 794 (2d Cir. 1996) (citations omitted).  In addition to the full faith and credit doctrine, plaintiff's belated attack on the search warrant implicates the doctrine of collateral estoppel.  "The 'fundamental notion' of the doctrine of collateral estoppel, or issue preclusion, is that an *issue of law or fact* actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or their privies."  *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008) (internal quotation marks and citation omitted); *see also Singleton v. City of N.Y.*, 632 F.2d 185, 205 (2d Cir. 1980) ("Accrual of the civil rights claim at the conclusion of the criminal proceeding achieves a more efficient allocation of judicial resources since the identical issues determined in the state court proceeding need not be relitigated in the federal court.") (citations omitted).

Here, plaintiff's inaction in state court and his eventual guilty plea undermine his efforts now to declare the search of his residence unlawful.  The Gaines Town Court received a facially meritorious application for search warrant

and decided that probable cause existed to issue the warrant.  Plaintiff never

challenged the warrant in state court and never sought to suppress any

evidence obtained when it was executed.  Plaintiff's decision is important

because when a suppression order from a state court "excludes tangible

property unlawfully taken from the defendant's possession, and when such

property is not otherwise subject to lawful retention, the court may, upon request

of the defendant, further order that such property be restored to him."  CPL

§ 710.70(1) (Westlaw 2011).  Since the time to conduct any such state court

proceedings almost certainly passed a long time ago, the state court's issuance

of the search warrant is final and deserves full faith and credit from this Court.

*See also* CPL § 710.70(3) ("[A] defendant who does not make such a motion

before or in the course of a criminal action waives his right to judicial

determination of any such contention.").  Additionally, plaintiff ratified the

decision to issue the warrant and all of the criminal proceedings that occurred in

state court by taking a guilty plea.  As for any allegations about due process,

plaintiff similarly ratified the actions of the Humane Society by choosing not to

contest the requirement of a seizure bond in state court.  Under these

circumstances, there is no way to sustain plaintiff's allegations without directly or

indirectly attacking the validity of the search warrant that set in motion all of the

events underlying this case.  The Court declines plaintiff's invitation to do just

that.  Accordingly, the Court grants Orleans County's motion with respect to plaintiff's third cause of action.

**F.**     ***Fourth Cause of Action: Section 1981 Claim***

Plaintiff's failure, in the first three causes of action of his amended complaint, to state a claim upon which relief could be granted requires dismissal of the fourth cause of action as well.  In his fourth cause of action, "Plaintiff claims he was subject to discriminatory treatment motivated by Plaintiff's race under 42 U.S.C. § 1981 *as set forth in the above stated paragraphs*."  (Dkt. No. 15 ¶ 57 (emphasis added).)  By making reference to the "above stated paragraphs," plaintiff bases his Section 1981 claim entirely on his prior allegations of equal-protection violations, of unlawful search and seizure, and of due-process violations.

"To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)."  *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (citations omitted); *see also Phillip v. Univ. of Rochester*, 316 F.3d 291, 297–98 (2d Cir. 2003) ("Because both contracts and torts are areas of particular state concern, there is no persuasive reason why racially motivated torts that deprive

a plaintiff of the equal benefit of laws or proceedings for the security of persons

and property should be outside the ambit of federal authority while racially

motivated breaches of contract are not.").  As explained elsewhere in this

Decision and Order, plaintiff has not pled that anyone else in Orleans County

has a kennel license and that he is similarly situated to them, so as to sustain his

"class of one" discrimination claim.  Plaintiff has not pled that Orleans County

was aware of other ongoing violations of A&ML §§ 353, 353b, and 373, so as to

sustain his selective-enforcement claim.  Plaintiff also has not pled that he

successfully vacated the search warrant issued for his residence, suppressed

evidence obtained pursuant to it, defeated any criminal charges filed against

him, or otherwise challenged any proceedings occurring against him in state

court.  Plaintiff would have needed to make such a pleading to sustain his third

cause of action.  To the contrary, plaintiff took a guilty for one set of charges

against him, took an ACD for the other set, and promised to reimburse the

Humane Society for costs that it incurred.  Without the first three causes of

action, there is no conduct described in the amended complaint that would

constitute a violation of Section 1981 attributable to Orleans County.  The Court

accordingly grants Orleans County's motion with respect to plaintiff's fourth

cause of action.

### G.     *No Further Re-pleading Warranted*

The final issue that the Court will consider is whether plaintiff should have leave to file another amended complaint.  "It is the usual practice upon granting a motion to dismiss to allow leave to replead.  Although leave to replead is within the discretion of the district court, refusal to grant it without any justifying reason is an abuse of discretion.  Of course, where a plaintiff is unable to allege any fact sufficient to support [his] claim, a complaint should be dismissed with prejudice." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (citations omitted).  The circumstances of this case make any further re-pleading unnecessary.  Plaintiff's original complaint contained the same four causes of action as the amended complaint.  Orleans County's original motion papers (Dkt. No. 6) put plaintiff on notice of all of the legal arguments that the Court has addressed here.  In response, plaintiff filed his amended complaint, which left all four causes of action intact and added only a few extra paragraphs in an attempt to address Orleans County's arguments.  Plaintiff thus has had one opportunity already to defeat the pending motion through an amended pleading. Additionally, no amount of pleading can change this Court's obligation to give full faith and credit to the final disposition of plaintiff's criminal case in state court. Under these circumstances, the Court finds that no further re-pleading is warranted and that dismissal of the amended complaint can be with prejudice.

**IV.     CONCLUSION**

For all of the foregoing reasons, the Court grants Orleans County's motion

(Dkt. Nos. 6, 16).  The amended complaint is hereby dismissed in its entirety.

The Clerk of the Court shall close this case.

SO ORDERED.

_s/ Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: June 22, 2011

## APPENDIX

The following are cases that plaintiff's counsel, Christina A. Agola, litigated in this District but that were dismissed on a Rule 12 or Rule 56 motion:

| Case No. | Case Name | Dismissed | Appeal? |
|---|---|---|---|
| 07-CV-6008T | Szarzynski v. Roche Labs., Inc. | 03/04/2010 | No |
| 07-CV-6056T | Barnhart v. Town of Parma<br><br>(* = Motion for reconsideration pending) | 09/23/2010 | No* |
| 07-CV-6149L | Johnson v. Univ. of Rochester Med. Ctr.<br><br>(* = Denial of reconsideration and award of sanctions affirmed, 2011 WL 1466522) | 02/19/2010 | Affirmed* 04/19/2011 |
| 07-CV-6159T | General v. Ctr. for Disability Rights | 04/12/2011 | Pending |
| 07-CV-6163T | Alessi v. Monroe County | 01/14/2010 | No |
| 07-CV-6191T | Ikejiaku v. Rochester City Sch. Dist. | 03/23/2011 | No |
| 07-CV-6250S | Rojas v. Roman Catholic Diocese of Rochester | 10/13/2010 | Pending |
| 07-CV-6270S | Colombo v. E. Irondequoit Cent. Sch. Dist. | 12/23/2010 | No |
| 07-CV-6298L | Mack v. Rochester City Sch. Dist. | 08/19/2010 | No |
| 07-CV-6430T | Claffey v. Wegman's Food Mkts., Inc. | 03/04/2010 | Withdrawn |
| 07-CV-6483L | Rivera v. Rochester Genesee Reg'l Transp. Auth. | 01/27/2011 | Pending |

| 07-CV-6500S | Vito v. Bausch & Lomb, Inc.<br><br>(Unpublished affirmance at 403 Fed. App'x 593) | 03/04/2010 | Affirmed 12/17/2010 |
|---|---|---|---|
| 07-CV-6544T | Lawson v. Rochester City Sch. Dist. | 10/22/2010 | Pending |
| 07-CV-6553T | Ikewood v. Xerox Corp. | 01/19/2011 | No |
| 08-CV-6017S | Meggison v. Paychex, Inc. | 01/11/2010 | No |
| 08-CV-6063T | Williams v. City of Rochester | 03/26/2010 | Dismissed by default |
| 08-CV-6166L | Heaphy v. Webster Cent. Sch. Dist. | 01/31/2011 | Pending |
| 08-CV-6191S<br>10-CV-6345S | Garner v. DII Indus., LLC | 02/08/2010<br>02/16/2011 | No<br>Pending |
| 08-CV-6300L<br>09-CV-6421L | Malcolm v. Honeoye Falls Lima Cent. Sch. Dist. | 05/20/2011<br>09/15/2010 | Pending<br>Pending |
| 08-CV-6463T | Thomas v. N.Y. State Dep't of Transp. | 07/01/2010 | No |
| 08-CV-6565S | Johnson v. Xerox Corp. | 03/21/2011 | No |
| 08-CV-6572T | Avgerinos v. Palmyra-Macedon Cent. Sch. Dist. | 03/11/2010 | No |
| 09-CV-6061L | Stein v. Churchville-Chili Cent. Sch. Dist. | 01/21/2011 | No |
| 09-CV-6075L | Zembiec v. County of Monroe | 02/23/2011 | Pending |
| 09-CV-6079L | Virgil v. Town of Gates | 11/05/2010 | Pending |
| 09-CV-6083T | Flint v. Tucker Printers, Inc. | 01/11/2011 | No |
| 09-CV-6178L | Sullivan v. Chappius | 05/06/2010 | No |
| 09-CV-6181S | Garside v. Hillside Family of Agencies | 01/06/2011 | No |

| | | | |
|---|---|---|---|
| 09-CV-6251L | Hoffmann v. Airquip Heating & Air Conditioning | 01/28/2011 | Pending |
| 09-CV-6259T | Andersen v. Rochester City Sch. Dist. | 04/18/2011 | Pending |
| 09-CV-6404L | Thomsen v. Stantec, Inc. | 05/20/2011 | Pending |
| 09-CV-6418S | Emmerling v. Town of Richmond (Unpublished affirmance at 2011 WL 2315167) | 08/04/2010 | Affirmed 06/14/2011 |
| 09-CV-6569L | Foster v. Humane Society of Rochester & Monroe County, Inc. | 07/23/2010 | No |
| 09-CV-6571S | Renzoni v. Finger Lakes Dev'l Disabilities Serv. Office | 06/08/2010 | No |
| 10-CV-6337S | Perry v. Wayne Arc (Unpublished affirmance at 2011 WL 2117950) | 11/24/2010 | Affirmed 05/27/2011 |
| 10-CV-6357T | Turner v. Nazareth Coll. | 02/03/2011 | Withdrawn |
| 10-CV-6427L | Drumm v. SUNY Geneseo Coll. | 05/19/2011 | Pending |
| 10-CV-6630T | Woodworth v. Shinseki | 06/06/2011 | Not yet |
| 11-CV-6098T | Tiberio v. Allergy Asthma Immunology of Rochester | 05/27/2011 | Not yet |

P:\ArcaraOrder\Spinks D&O Dismiss class of one no similarly situated.wpd